UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE LEE SMITH,

Petitioner,

v.

CINDI CURTIN,

Respondent.

_____/

Case No. 13-cv-11796

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER DENYING THE AMENDED PETITION FOR
WRIT OF HABEAS CORPUS [8], DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

**I. INTRODUCTION**

Freddie Lee Smith ("Petitioner") filed a *pro se* Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 on April 22, 2013, and an amended Petition on August 28, 2013. In

his Petitions [1, 8] Petitioner challenges his Wayne County (Michigan) convictions for armed

robbery, *see* MICH. COMP. LAWS § 750.529, and assault with intent to do great bodily harm less

than murder, MICH. COMP. LAWS § 750.84.

Petitioner asserts in his amended petition, which supersedes the initial petition,[1] that his

trial attorney was ineffective, that the prosecutor committed misconduct, and that the evidence at

trial was not sufficient to support the jury's verdict. Respondent Cindi Curtin urges the Court,

through counsel, to deny the Petition on grounds that Petitioner procedurally defaulted his

prosecutorial-misconduct claim and that the state court's adjudication of the other claims was not

_____

[1] *See Hayward v. Cleveland Clinic Found.*,759 F.3d 601, 617 (6th Cir. 2014) (stating that
amended pleadings generally supersede original pleadings).

contrary to, or an unreasonable application of, Supreme Court precedent. The Court agrees that Petitioner's claims do not warrant habeas corpus relief. Accordingly, the Court will **DENY** the amended Habeas Petition [8].

## II. BACKGROUND

### A. The Charges, Trial, Sentence, and Appeal

Petitioner was charged with armed robbery, MICH. COMP. LAWS § 750.529, and assault with intent to commit murder, MICH. COMP. LAWS § 750.83, or assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, or assault with a dangerous weapon (felonious assault), MICH. COMP. LAWS § 750.82. The charges arose from an incident at the Vineyard Liquor Store in Melvindale, Michigan on Sunday, April 18, 2010. The Michigan Court of Appeals provided the following brief overview of the evidence:

> Defendant assaulted a liquor store employee, Yacoub ("Jacob") Hermiz, with a knife, and stole money and liquor from the store. Hermiz suffered an abrasion on his stomach.

*People v. Smith*, No. 299989 (Mich. Ct. App. Jan. 19, 2012) (unpublished).

Mr. Hermiz was acquainted with Petitioner from the neighborhood and he saw Petitioner in the liquor store three times on the day of the robbery. The third time, Petitioner "dropped" him to the floor, searched him, and asked him where his gun was. "Bill" then came in the store and Hermiz told Bill to help him because Petitioner was planning to hurt him. Bill left the store and called the police. Petitioner then took the Lotto and Instant Ticket money and a bottle or two of Tequila. (Trial Tr. Vol. II, 42-52, Aug. 2, 2010.)

A friend of Mr. Hermiz, William Lain, testified that he entered the store about 2:00 p.m. on April 18, 2010. He observed Petitioner standing over Mr. Hermiz who was lying on the floor. Petitioner appeared to be searching Mr. Hermiz, and he was asking Hermiz for his gun. Mr. Lain

knew Petitioner by sight, and when he asked Petitioner what he was doing, Petitioner told Mr.

Lain not to get involved. Mr. Hermiz, however, told Mr. Lain not to leave because he thought

that Petitioner was going to kill him. Mr. Lain saw what appeared to be a knife about three feet

from Petitioner and Mr. Hermiz. Mr. Lain left the store and called the 911 operator. By the time

he returned to the store, a police officer was there. (*Id.* at 6-17.)

The store owner, Mike Ohara, was not present during the robbery, but he testified that

money and some liquor were missing from the store after the incident. He had seen Petitioner

many other times, and he recognized Petitioner on a videotape of the incident. The videotape

showed Petitioner attacking Mr. Hermiz. Mr. Ohara handed the videotape to a detective (*id.* at

25-39), and Petitioner later turned himself in to the police (*id.* at 92).

On August 3, 2010, the jury found Petitioner guilty, as charged, of armed robbery, MICH.

COMP. LAWS § 750.529. The jury also found Petitioner guilty of assault with intent to do great

bodily harm less than murder, MICH. COMP. LAWS § 750.84, as a lesser-included offense of

assault with intent to commit murder. The trial court sentenced Petitioner to imprisonment for

thirty to sixty years for the armed robbery and to a concurrent term of five to ten years in prison

for the assault. (Sentence Tr., 11, Aug. 17, 2010.)

On appeal from his convictions, Petitioner argued that his trial attorney was ineffective,[2]

that the prosecutor misrepresented Dr. Daniel Sheesley's testimony, and that the prosecution

---

[2]  The specific claims were that defense counsel failed to: (1) make an opening statement;
(2) object to the admission of a drawing of the human body; (3) object to the admission of the
knife; (4) object to the complainant's speculation that the holes in his clothes were made by the
knife; (5) object to a detective's testimony about Petitioner's actions on the videotape; (6) move
for a directed verdict; (7) mention the exculpatory evidence; (8) object to the prosecutor's
characterization of the doctor's testimony; and (9) impeach the detective with his testimony from
the preliminary examination regarding the presence of an object in Petitioner's hands.

failed to produce sufficient evidence to support the jury's verdict. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* decision. *See People v. Smith*, No. 299989, 2012 WL 164083 (Mich. Ct. App. Jan. 19, 2012). Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on June 25, 2012, because it was not persuaded to review the issues. *See People v. Smith*, 491 Mich. 944; 815 N.W.2d 465 (2012) (table).

**B.  The Habeas Petition, Answer, and Amended Petition**

On April 22, 2013, Petitioner filed his first habeas corpus petition. In his supporting brief, Petitioner raised thirteen claims about trial counsel, one claim about the prosecutor, one claim about the trial court, and one claim about the weight of the evidence. Respondent filed an answer to the petition in which she argued that Petitioner's claims were unexhausted, procedurally defaulted, or not cognizable on habeas review and that the state court's decision on Petitioner's claim about trial counsel was not unreasonable.

Petitioner subsequently filed an amended Petition in which he alleges that his trial attorney failed to: (1) make an opening statement; (2) object to the admission of a graphic drawing of the body; (3) object to the admission of the proposed weapon; (4) object to the complainant's speculative testimony; (5) object to the detective's opinion testimony; (6) move for a directed verdict; (7) capitalize on exculpatory evidence; (8) object to the prosecutor's mischaracterization of Dr. Sheesley's testimony; and (9) impeach the detective's testimony with the transcript of the preliminary examination. Petitioner also claims that the prosecutor committed misconduct by misrepresenting Dr. Sheesley's testimony and that the prosecution failed to present sufficient evidence.

## III.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97, 131 S. Ct. 770, 783, 178 L.Ed.2d 624 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*., 529 U.S. at 411, 120 S. Ct. at 1522. "AEDPA thus imposes a 'highly deferential standard for evaluating

-5-

state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481

(1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v.*

*Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*)." *Renico v. Lett*,

559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L.Ed.2d 678 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so

long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

*Richter*, 562 U.S. at 101, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664,

124 S. Ct. 2140, 158 L.Ed.2d 938 (2004)). To obtain a writ of habeas corpus from a federal

court, a state prisoner must show that the state court's ruling on his claims "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Id.*, 562 U.S. at 103, 131 S. Ct. at 786-87.

## IV. DISCUSSION

### A. Trial Counsel

Petitioner claims that his trial attorney's omissions amounted to ineffective assistance of

counsel. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that

defense counsel was not ineffective. The Court of Appeals stated that most of defense counsel's

"decisions were within the realm of sound trial strategy" and that any decisions, which were not

sound trial strategy, did not prejudice Petitioner to the extent that he was entitled to a new trial.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.

2052, 80 L.Ed.2d 674 (1984), is clearly established federal law for purposes of Petitioner's

ineffective-assistance-of-counsel claim. *Cullen v. Pinholster*, 563 U.S. 170, __, 131 S. Ct. 1388,

1403, 179 L.Ed.2d 557 (2010). Under *Strickland,* a defendant must show that his trial attorney's

"performance was deficient" and "that the deficient performance prejudiced the defense."

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*., 466 U.S. at 689, 104 S. Ct. at 2065.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id*. (internal citation omitted).

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., 466 U.S. at 694, 104 S. Ct. at 2068. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693, 104 S. Ct. 2052).

### 1. Failure to Make an Opening Statement

Petitioner claims that his trial attorney provided ineffective assistance because the attorney did not make an opening statement or present a clear picture of the case. Petitioner

claims there was no sound reason for waiving the opening statement. Petitioner further alleges that his attorney omitted the opening statement because he did not want to support Petitioner's theory that the incident resulted from an altercation between him and the complainant over a debt that the complainant refused to settle with Petitioner.

"A trial counsel's failure to make an opening statement . . . does not automatically establish the ineffective assistance of counsel." *Moss v. Hofbauer*, 286 F.3d 851, 863 (6th Cir. 2002). "An attorney's decision not to make an opening statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.' " *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (end citations omitted).

Petitioner's attorney initially reserved his opening statement (Trial Tr. Vol. I, 112, July 29, 2010) and subsequently decided not to make an opening statement after Petitioner decided not to testify (Trial Tr. Vol. III, 3-5, Aug. 3, 2010). But, as the Michigan Court of Appeals pointed out,

> [r]eserving opening until the close of the prosecution's case, perhaps to tailor it to the evidence the prosecution presented or the testimony of witnesses the defense might call, and then waiving it once it became apparent the defense would call no witnesses, was within the realm of sound trial strategy. If counsel had made an opening statement and then called no witnesses, his statement would have been immediately followed by the prosecution's closing argument, then defense counsel's closing, then prosecution's rebuttal. Defense counsel may have chosen to avoid such a round-robin set of arguments to minimize jury confusion and prevent dilution of the defense's message.

*Smith,* No. 299989, 2012 WL 164083, at *1.

For the reasons given by the Michigan Court of Appeals, this Court agrees that defense counsel's failure to make an opening statement was within the realm of sound trial strategy and did not constitute deficient performance. The lack of an opening statement also could not have prejudiced the defense, because the trial court informed the jurors that defense counsel did not

-8-

have to make an opening statement and that Petitioner was not required to offer any evidence or prove his innocence. (Trial Tr. Vol. I, 100-01, July 29, 2010.)

### 2. Failure to Object to the Drawing

Petitioner asserts that trial counsel was ineffective for failing to object to a drawing, which depicted a human body with a mark indicating the spot on Mr. Hermiz' abdomen where he sustained an abrasion. Petitioner contends that the drawing distorted the actual injury, reinforced the prosecutor's theory that Mr. Hermiz was stabbed, and was irrelevant because there was no evidence that he knew the anatomy of the human body.

Contrary to what Petitioner says, the drawing was relevant. It was relevant to the issue of Petitioner's intent because, as the Michigan Court of Appeals recognized, "attempting to stab someone in an area of the body containing many vital organs indicates an intent to do more harm than, for example, stabbing someone in an outer extremity." *Smith*, No. 299989, 2012 WL 164083, at *2. Thus, the failure to object to the drawing did not amount to deficient performance. The drawing also did not prejudice the defense, because it "merely illustrated what [Dr.] Sheesley was already testifying to," and "reasonable people presumably know that getting stabbed in the stomach could cause serious injury or death." *Id*. Petitioner has failed to show that counsel's failure to object to the drawing constituted ineffective assistance.

### 3. Failure to Object to the Weapon

Petitioner claims that his attorney should have objected to the admission in evidence of the knife used during the crime. Petitioner claims that there was no evidence linking him to the weapon and that he informed his attorney he did not brandish the weapon.

The Michigan Court of Appeals determined that the knife was properly admitted in evidence. In reaching this decision, the Court of Appeals noted that:

-9-

> Detective [David] Taft, [Mr.] Hermiz, and witness William Lain all testified that the knife was found at the crime scene near where defendant and Hermiz struggled. A photograph admitted into evidence also showed the knife where the witnesses said it was. Hermiz testified the knife was not there before the altercation. The knife was admitted through Taft, who testified that it was the knife he recovered from the floor of the liquor store. According to testimony, a video recording of the incident also apparently showed defendant taking out a knife and trying to stab Hermiz with it. Finally, Hermiz had an abrasion on his stomach after the assault, and the knife had biohazard on it.

*Smith*, No. 299989, 2012 WL 164083, at *3. The Court of Appeals concluded that "[t]he knife was relevant to the issue of whether defendant was armed" and, "[i]n light of the evidence presented, the prosecution established a proper foundation for the knife and connected the knife with the crime and with defendant. Therefore, the evidence was properly admitted . . . ." *Id.*

This Court is bound by the state court's interpretation of state law, *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L.Ed.2d 407 (2005), and because the state court said the knife was properly admitted, defense counsel was not ineffective for failing to object to the admission of the knife. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.), *cert. denied*, 134 S. Ct. 513, 187 L.Ed.2d 371 (2013).

### 4. Failure to Object to the Complainant's Speculative Testimony

Mr. Hermiz testified that holes in his clothing were caused by the knife that Petitioner used during the crime. (Trial Tr. Vol. II, 64, 67, Aug. 2, 2010.) Petitioner asserts that trial counsel should have objected to this testimony as speculative because Mr. Hermiz did not see Petitioner with a knife (*id*. at 79) and did not realize at the time that he had been stabbed (*id*. at 107). The Michigan Court of Appeals adjudicated this claim on the merits and concluded that Hermiz' testimony was admissible and, therefore, defense counsel was not ineffective for failing to object.

-10-

In Michigan, a witness who is not testifying as an expert may give an opinion if his opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MICH. R. EVID. 701. Mr. Hermiz' testimony was admissible because his opinion that the holes in his clothes were caused by the knife in evidence was based on a rational perception of the knife in question, the clothes that he was wearing on the day of the robbery, and the incident itself. His opinion was helpful on the issue of whether Petitioner actually assaulted Mr. Hermiz. Therefore, his testimony was admissible under Michigan Rule of Evidence 701, and defense counsel was not ineffective for failing to object to Mr. Hermiz' testimony about the holes in his clothing.

### 5. Failure to Object to the Detective's Narrative

At trial, Detective David Taft described the criminal incident while a videotape of the crime was shown to the jury. (Trial Tr. Vol. II, 103-10, Aug. 2, 2010.) Petitioner contends that defense counsel should have objected to Detective Taft's narrative because the narrative was inadmissible hearsay. Petitioner also contends that, contrary to Detective Taft's commentary (*id.* at 106-07), the video does not show him putting on a glove, pulling out a knife, and thrusting the knife into Mr. Hermiz.

The Michigan Court of Appeals determined that Detective Taft's testimony about the contents of the videotape was inadmissible under the Michigan Rule of Evidence 602. The Court of Appeals stated that Taft did not have personal knowledge of the videotape's contents, and his knowledge of the contents of the videotape was no greater than what the jury could obtain by viewing the videotape. The Court of Appeals also determined that the testimony was damaging to Petitioner, because whether Petitioner was armed was a major issue in the case. The Court of

Appeals also stated that defense counsel's failure to object to the testimony did not appear to be a matter of trial strategy.

The Court of Appeals nevertheless concluded that defense counsel was not ineffective for failing to object to the testimony, because there was other evidence indicating that Petitioner was armed. The Court of Appeals pointed out that

> [Mr.] Hermiz, [Detective] Taft, and [witness William] Lain all testified to the presence of the knife. The knife had not been there prior to the incident. Hermiz had holes in his clothes and an abrasion on his stomach consistent with a knife wound, and the knife appeared to have biohazard on it.

*Smith*, No. 299989, 2012 WL 164083, at *4.

Given this evidence about the knife, there is not a substantial probability that the result of the trial would have been different had defense counsel objected to Detective Taft's narrative of the videotape. The Court therefore agrees with the Michigan Court of Appeals that defense counsel's failure to object to the commentary did not prejudice Petitioner and did not constitute ineffective assistance.

### 6. Failure to Move for a Directed Verdict

Petitioner alleges next that his attorney was ineffective because he failed to move for a directed verdict of acquittal. According to Petitioner, a motion for a directed verdict was necessary because the evidence did not support the charges. Petitioner claims that there was evidence of a simple assault and a larceny, but no direct evidence of an armed robbery.

When assessing a motion for a directed verdict of acquittal in Michigan, "a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v.*

-12-

*Riley*, 468 Mich. 135, 139-40; 659 N.W.2d 611, 613-14 (2003). But where the evidence is sufficient to convict the defendant, the failure to move for a directed verdict at the close of the evidence does not prejudice the defense. *Maupin v. Smith*, 785 F.2d 135, 140 (6th Cir. 1986); *Hurley v. United States,* 10 F. App'x 257, 261 (6th Cir. 2001).

In this case, there was evidence that Petitioner was armed with a knife, that he assaulted Mr. Hermiz, and that he stole liquor and money from the Vineyard Liquor Store on April 18, 2010. The facts were sufficient to find Petitioner guilty of armed robbery.

As for the other charges, the Michigan Court of Appeals determined that the facts were sufficient to establish an assault because Mr. Hermiz testified that Petitioner:

> "dropped" him in the store. [William] Lain testified [that] he saw [Petitioner] over Hermiz when he walked in. The holes in Hermiz's clothes and his stomach abrasion [were] consistent with a knife attack.

*Smith*, No. 299989, 2012 WL 164083, at *5. The Court of Appeals also noted that Petitioner wielded a dangerous weapon during the assault and that he apparently used the knife so forcefully that the knife was bent. These facts were sufficient to establish an assault and that Petitioner intended to kill Mr. Hermiz, do great bodily harm to him, or injure him.

A rational trier of fact could have determined that the prosecutor established the essential elements of armed robbery and assault with intent to murder, assault with intent to commit great bodily harm less than murder, or felonious assault. Because the evidence was sufficient to convict Petitioner, a motion for a directed verdict would have failed, and defense counsel's failure to move for a directed verdict did not prejudice the defense.

### 7. Failure to Capitalize on Exculpatory Evidence

As another basis for Petitioner's ineffective-assistance-of-counsel claim, Petitioner asserts that his attorney should have capitalized on exculpatory evidence during closing

-13-

arguments. Petitioner claims that defense counsel should have emphasized the reasonable inference that he did not commit an armed robbery or intend to murder Mr. Hermiz.

There was little, if any, exculpatory evidence to emphasize. Identity was not an issue because both Mr. Hermiz and eyewitness William Lain knew Petitioner. The evidence, moreover, indicated that Petitioner was armed with a knife that had a six-inch blade and that he scratched Mr. Hermiz with the knife. Although the injury was minor, that may have been because Mr. Hermiz was wearing five or six layers of clothing, including a jacket, a sweater, a long-sleeved shirt, a long sleeved thermo undershirt, and an undershirt. (Trial Tr. Vol. II, 63-65, Aug. 2, 2010.) The jury could have inferred from the use of the knife that Petitioner intended to kill, do great bodily harm, or injure Mr. Hermiz.

To his credit, defense counsel emphasized the presumption of innocence and the prosecution's burden of proving its case beyond a reasonable doubt. Defense counsel also questioned the credibility of the witnesses. He mentioned that the store owner, Mike Ohara, did not witness the crime, and he noted that Mr. Hermiz' injury was so minor it required only a bandage. Defense counsel also stressed Mr. Hermiz' testimony at the preliminary examination: that he did not see Petitioner with a knife and that Petitioner did not threaten him with a knife. (Trial Tr. Vol. III, 16-19, Aug. 3, 2010.) Defense counsel concluded his argument by conceding that Petitioner stole some liquor from the store. (*Id*. at 20.) The implication was that Petitioner was guilty of larceny, but not guilty of the charged offenses.

"There are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, and, in this case, defense counsel obviously made a strategic decision as to which facts and arguments to emphasize in light of the overwhelming evidence against Petitioner. "Under *Strickland*, 'strategic choices made after thorough investigation of law

-14-

and facts relevant to plausible options are virtually unchallengeable . . . .' " *Hinton v. Alabama*, 134 S. Ct. 1081, 1088; 188 L. Ed. 2d 1 (2014) (quoting *Strickland*, 468 U.S. at 690-91, 104 S. Ct. 2052). Like the Michigan Court of Appeals, this Court "cannot conclude that defense counsel's omission of certain arguments constituted ineffective assistance of counsel." *Smith*, No. 299989, 2012 WL 164083, at *5.

### 8. Failure to Object to the Prosecutor's Mischaracterization of Testimony

Petitioner claims that the prosecutor mischaracterized Dr. Sheesley's testimony during closing arguments and that defense counsel should have objected to the prosecutor's comment. The Michigan Court of Appeals stated on review of this claim that the prosecutor made a reasonable inference from Dr. Sheesley's testimony and, therefore, any objection to the argument would have been futile. The Michigan Court of Appeals concluded that defense counsel was not ineffective for failing to object to the prosecutor's statement.

"Misrepresenting facts in evidence can amount to substantial error because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.' " *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646, 94 S. Ct. 1868, 40 L.Ed.2d 431 (1974)). Here, the prosecutor stated during closing arguments that Dr. Sheesley had testified that Mr. Hermiz could have died if he were stabbed in the torso. (Trial Tr. Vol. III, 13, Aug. 3, 2010.) The actual testimony, in context, reads:

> The location of the wound, we heard from Dr. Shesley (sic), and you can take that exhibit back in the jury room, of all of the vital organs and arteries in the torso area. The Defendant didn't take the knife and precisely try and place [it] in his knee or his arm. He took it and stabbed him in the torso, and the doctor testified that anywhere in this area *he could have died. He could have bleed* (sic) *to death.*

(Trial Tr. Vol. III, 13, Aug. 3, 2010) (emphasis added).

-15-

Dr. Sheesley, in fact, testified that Mr. Hermiz suffered from an abrasion (scratch) approximately one and a half centimeters long and that the knife did not penetrate the abdominal cavity. (Trial Tr. Vol. I, 116-19, July 29, 2010.) When the prosecutor asked Dr. Sheesley whether it was possible that a very serious injury could result if the knife punctured any of the arteries or organs close to where Mr. Hermiz had the abrasion, Dr. Sheesley said, "Yes, that's correct." He also stated that an artery was within a couple of inches of where Mr. Hermiz had the abrasion. (*Id.* at 122.) But he never said that Mr. Hermiz could have bled to death if he had been stabbed in the torso.

Nevertheless, Dr. Sheesley did acknowledge that Mr. Hermiz could have been seriously injured if the knife had penetrated his abdomen, and the other evidence against Petitioner was substantial. Further, the trial court instructed the jurors that the attorneys' arguments were not evidence. (Trial Tr. Vol. I, 101, July 29, 2010; Trial Tr. Vol. III, 27, Aug. 3, 2010.) Therefore, even assuming that defense counsel's failure to object amounted to deficient performance, the deficient performance did not prejudice the defense.

### 9. Failure to Impeach Detective Taft

Petitioner asserts that defense counsel should have impeached Detective Taft at trial with his testimony from the preliminary examination regarding Petitioner's possession of the knife. At the preliminary examination, Detective Taft stated that, when he watched a videotape of the crime, he saw Petitioner thrust something into Mr. Hermiz and that the item appeared to be a knife. (Prelim. Examination Tr. 35, May 3, 2010.) At trial, Detective Taft narrated the videotape of the crime and said that Petitioner pulled a knife from his pocket. (Trial Tr. Vol. II, 106, Aug. 2, 2010.)

There is no significant difference in Detective Taft's testifying at the preliminary examination (that the item in Petitioner's hand in the videotape "appeared to be a knife") and Taft's testimony at trial (that Petitioner pulled a knife from his pocket). Furthermore, there was other evidence that Petitioner used a knife during the incident, *see supra* section IV.A.5, and the jurors were permitted to view the videotape of the incident during trial and again during their deliberations. The Court therefore agrees with the Michigan Court of Appeals that the failure "to draw out an inconsistency in testimony where none exists cannot constitute ineffective assistance of counsel." *Smith*, No. 299989, 2012 WL 164083, at *7.

### 10.  Summary

For all the reasons given above, the Court finds that defense counsel's omissions did not amount to constitutionally ineffective assistance of counsel. Therefore, the state court's adjudication of Petitioner's claim was not contrary to, nor an unreasonable application of, *Strickland*, and Petitioner is not entitled to habeas corpus relief on his ineffective-assistance-of-counsel claim.

## B.  The Prosecutor

Petitioner asserts as an independent claim that the prosecutor misrepresented Dr. Sheesley's testimony during closing arguments when the prosecutor said that, according to Dr. Sheesley, Mr. Hermiz could have bled to death. Respondent argues that this claim is procedurally defaulted because Petitioner did not object to the prosecutor's remarks at trial and because the Michigan Court of Appeals reviewed the claim for "plain error" due to Petitioner's failure to object.

A procedural default, however, is not a jurisdictional matter, *Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480, 139 L.Ed.2d 444 (1997), and Petitioner's claim lacks substantive merit.

-17-

Further, an analysis of whether Petitioner's claim is procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore proceeds directly to the merits of Petitioner's claim.

### 1. Clearly Established Federal Law

As noted above, prosecutors may not misrepresent the facts, "because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.' " *Washington*, 228 F.3d at 700 (quoting *DeChristoforo*, 416 U.S. at 646, 94 S. Ct. at 1873). But "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). *Darden v. Wainwright* provides further elaboration on this issue:

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.' " *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

### 2. Application

Petitioner alleges that the prosecutor misrepresented the facts and misled the jury when she stated during closing arguments that, according to Dr. Sheesley's testimony, Mr. Hermiz could have bled to death if he had been stabbed in the torso. Petitioner claims that Dr. Sheesley

never made that comment and, instead, merely acknowledged that a serious injury could result if the knife had punctured one of the arteries or organs in the abdomen.

The Court agrees that the prosecutor misrepresented Dr. Sheesley's testimony. Dr. Sheesley acknowledged that serious injury could result from a stab wound to the abdomen, but he not testify that Mr. Hermiz could have bled to death. Nevertheless, the prosecutor did not repeat the remark, and she subsequently stated that Mr. Hermiz "was lucky to only get a scrape . . . ." (Trial Tr. Vol. III, 14, Aug. 3, 2010). Furthermore, the evidence against Petitioner was overwhelming, and the trial court instructed the jury that the attorneys' arguments were not evidence.

The prosecutor's error did not infuse the trial with such unfairness as to violate Petitioner's right to due process. The error also could not have had a "substantial and injurious effect or influence" on the jury's verdict and was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714, 123 L.Ed.2d 353 (1993). Consequently, Petitioner has no right to relief on the basis of his prosecutorial-misconduct claim.

## C.  Sufficiency of the Evidence

In his third and final claim, Petitioner alleges that the prosecution failed to produce sufficient evidence to support the jury's verdict. Specifically, Petitioner claims there was insufficient evidence that he was armed. He relies on testimony that Mr. Hermiz never saw Petitioner with a knife, was never threatened with a knife, and never felt as though he had been stabbed. (Trial Tr. Vol. II, 79, 107, Aug. 2, 2010.) The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded that:

-19-

the prosecutor submitted sufficient evidence to allow a reasonable jury to find that
each element of armed robbery and assault with intent to do great bodily harm
less than murder was proved beyond a reasonable doubt. Therefore, defendant is
not entitled to a reversal of his convictions.

*Smith*, No. 299989, 2012 WL 164083, at *9.

### 1.  Clearly Established Federal Law

The critical inquiry on review of the sufficiency of the evidence to support a criminal

conviction is:

> whether the record evidence could reasonably support a finding of guilt beyond a
> reasonable doubt. But this inquiry does not require a court to "ask itself whether *it*
> believes that the evidence at the trial established guilt beyond a reasonable
> doubt." Instead, the relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, *any* rational trier of fact could have found
> the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)

(internal citation and footnote omitted) (emphases in original). This standard "must be applied

with explicit reference to the substantive elements of the criminal offense as defined by state

law." *Id.,* 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16.

### 2.  Application

Petitioner was convicted of armed robbery. The Michigan Court of Appeals defined the

elements of that crime as follows:

> The elements of armed robbery, MCL 750.529, are: "(1) an assault and (2) a
> felonious taking of property from the victim's presence or person (3) while the
> defendant is armed with a weapon." *People v. Bobby Lynell Smith*, 478 Mich.
> 292, 319; 733 NW2d 351 (2007). The evidence must show that the assault
> occurred before or at the same time as the taking of the property. *People v.
> Scruggs*, 256 Mich. App. 303, 310; 662 NW2d 849 (2003).

*Smith*, No. 299989, 2012 WL 164083, at *4.

The Court of Appeals concluded that the prosecutor proved these elements because:

-20-

the video recording showed an assault, and Hermiz and Lain both testified that defendant assaulted Hermiz. The recording also showed, and Hermiz testified, that defendant stole liquor and lottery money from the store in Hermiz's presence after defendant assaulted Hermiz. Store owner Mike Oraha confirmed that the money and liquor were missing. Finally, . . . there is sufficient evidence that defendant was armed with a knife during the assault.

*Id.*, 2012 WL 164083, at *5.

As for Petitioner's argument that Mr. Hermiz did not know he had a knife during the assault and, therefore, was not assaulted, the Court of Appeals said:

this Court has consistently rejected the argument that a directed verdict should be granted in an armed robbery prosecution when the victim never actually saw the defendant with a weapon. See *People v. McCadney*, 111 Mich. App. 545, 550–551; 315 NW2d 175 (1981). That the defendant *had* a dangerous weapon during the assault is sufficient. *Id.*

*Id.* (emphasis in original).

Petitioner also was convicted of assault with intent to do great bodily harm less than murder. The Court of Appeals defined the elements of this crime as follows:

The elements of assault with intent to do great bodily harm less than murder, MCL 750.84, are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v. Brown*, 267 Mich. App. 141, 147; 703 NW2d 230 (2005), quoting *People v. Parcha*, 227 Mich. App. 236, 239; 575 NW2d 316 (1997).

*Id.* The Court of Appeals summarized the evidence supporting this and the other assault charges as follows:

Here, Hermiz testified that defendant "dropped" him in the store. Lain testified he saw defendant over Hermiz when he walked in. The holes in Hermiz's clothes and his stomach abrasion are consistent with a knife attack.

*Id.*

The Court of Appeals concluded that the facts were sufficient to establish that an assault occurred and that Petitioner wielded a dangerous weapon during the assault. Additionally, the Court of Appeals stated:

> That the knife was bent also suggests a forceful, but unsuccessful, blow to Hermiz's abdomen. This fact could allow a jury to infer that defendant intended to kill or do great bodily harm to Hermiz.

*Id.*

For the reasons given by the state court, a rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner committed an armed robbery and that he assaulted Mr. Hermiz with intent to do great bodily harm less than murder. Consequently, the state court's decision was not contrary to, or an unreasonable application of, *Jackson*, and Petitioner is not entitled to habeas relief on the basis of his challenge to the sufficiency of the evidence.

## V. CONCLUSION

The state appellate court's decision in this case was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The state court's decision certainly was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the amended habeas petition [8] is **DENIED**.

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034, 154 L.Ed. 2d 931 (2003). A certificate of appealability may issue "only if

the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, when, as here,

> a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L.Ed 542 (2000).

Here, defense counsel's omissions did not rise to the level of constitutionally ineffective assistance, the prosecutor's conduct did not deprive Petitioner of a fair trial, and the evidence was sufficient to support the jury's verdict. Consequently, reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. The Court therefore declines to issue a certificate of appealability. Nevertheless, Petitioner may appeal this Court's decision *in forma pauperis*, because an appeal could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

    **SO ORDERED**.


                                                    /s/Gershwin A Drain
Dated: October 1, 2015                              HON. GERSHWIN A. DRAIN
                                                    United States District Court Judge

-23-